FILED
2022 Aug-29  AM 09:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **JOEY WILHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **7:20-cv-00847-KOB** |
| **JAMESON PARKER,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on the remaining Defendants' motion for summary judgment. (Doc. 51).[1] Plaintiff, Joey Wilhite, was at the time of the events giving rise to this case an inmate at Bibb Correctional Facility ("Bibb"), a prison under the authority of the Alabama Department of Corrections. Mr. Wilhite alleges that he suffers from epileptic seizures and that Sergeant Jameson Parker and Officer Andrew Cutts, Sr., correctional officers at Bibb, severely beat him during and after one of his seizures on September 25, 2018, using excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *See* (doc. 1 at ¶¶ 1, 11-27).

---

[1] At the time Defendants' motion was filed, three defendants remained: Andrew Cutts, Sr., Charles Monk, and Jameson T. Parker. The court subsequently dismissed Mr. Monk pursuant to the parties' joint stipulation. *See* (docs. 63-64).

Defendants' motion requests "summary judgment, in whole or in part" and that the court "dismiss Plaintiff's complaint, in whole or in part." (Doc. 54 at 1). Although the complaint alleges three causes of action—excessive force under the Eighth Amendment and state law claims of (a) assault and battery and (b) negligence and recklessness (Doc. 1 at ¶¶ 23-34)—Defendants' brief addresses only the excessive force claim. The court accordingly construes the motion as one for summary judgment on the excessive force claim and does not address the state law claims. Because the facts, construed in the light most favorable to Mr. Wilhite, would enable a reasonable jury to conclude that Defendants violated Mr. Wilhite's constitutional rights by using excessive force against him, the court will deny Defendants' motion.

## I.    Facts

Given the context of an excessive force allegation, the substantial differences between Plaintiff's and Defendants' accounts of the relevant events are hardly surprising. However, "on summary judgment, the district court must accept as fact all allegations the non-moving party makes, provided they are sufficiently supported by evidence of record." *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). The court accordingly sets forth below the evidence in the record in the light most favorable to Mr. Wilhite, resolving all discrepancies or contradictions in the

accounts in the manner most supportive of Mr. Wilhite's claims; but these facts may not ultimately prove to be the true facts.

On September 25, 2018, Mr. Wilhite, an inmate at Bibb, suffered two epileptic seizures. The first seizure occurred around 7 AM; a fellow inmate, Roderick Dancy, informed Sergeant Parker and other correctional officers who arrived on the scene that Mr. Wilhite was having an epileptic seizure, not symptoms of drug use. Sergeant Parker escorted Mr. Wilhite to the medical unit, where he observed a nurse administer Mr. Wilhite's seizure medication to him. Mr. Wilhite then returned to his cell to recover from this first seizure. (Doc. 61-2 at ¶¶ 1-5; Doc. 61-3 at ¶¶ 4-5).

After sleeping for several hours, Mr. Wilhite visited another inmate, Robert Southby, in another dormitory. While there, he began to feel sick again and attempted to return to his dorm but began suffering another seizure on his way there. (Doc. 61-2 at ¶¶ 4-5). During his seizure, Mr. Wilhite was "real tense and shaking" (Doc. 61-5 at ¶ 6) and his arms were "flailing," but he was "not violent" (Doc. 61-6 at ¶ 3). Inmates again explained to the officers that Mr. Wilhite was seizing, not high. (Doc. 61-4 at ¶ 3; Doc. 661-6 at ¶ 3). Fellow inmates called for assistance, and several correctional officers arrived, handcuffed Mr. Wilhite, placed him in a wheelchair, and transported him to the infirmary. (Doc. 61-2 at ¶ 6; Doc. 61-4 at ¶ 3; Doc. 61-5 at ¶ 6; Doc. 61-6 at ¶¶ 3-4). On the way to the

infirmary, Mr. Wilhite "was not talking and appeared to be unconscious." (Doc. 61-6 at ¶ 4).

At the infirmary, the other officers handed Mr. Wilhite over to Sergeant Parker, Officer Cutts, and a doctor, who cuffed his feet and put him on a gurney. (Doc. 61-2 at ¶¶ 6-7). While Mr. Wilhite was still restrained with handcuffs and unable to resist, Sergeant Parker and Officer Cutts used wooden batons to beat Mr. Wilhite "viciously" on his head, arms, legs, and back, and Officer Cutts also punched him in the chest. (Doc. 61-2 at ¶ 8; Doc. 66-1 at ¶ 6). At some point during the beating, the officers removed Mr. Wilhite from the gurney and placed him face-down on the floor or suspended him just above it. (Doc. 66-1 at ¶ 6; Doc. 61-2 at ¶ 10). Mr. Wilhite cried out to medical personnel for help during the beating, but either Sergeant Parker or Officer Cutts then led the medical staff away. (Doc. 66-1 at ¶ 7). Sergeant Parker eventually uncuffed Mr. Wilhite, instructed him to remove his clothes, and prepared a body chart documenting Mr. Wilhite's injuries. (Doc. 61-2 at ¶ 11).

Mr. Wilhite returned to his dorm, explained to other inmates that Sergeant Parker and Officer Cutts had beaten him, and showed his injuries to the other inmates. At this point, Mr. Wilhite "could hardly walk" and had "big bruises" and "long stripes" on much of his body, including injuries to his legs, back, ribs, arms, shoulder, and face. (Doc. 61-4 at ¶¶ 4-5; Doc. 61-5 at ¶ 7; Doc. 61-6 at ¶ 6; Doc.

4

66-1 at ¶ 8). A few days later, Mr. Wilhite's bruises had "turned absolutely black." (Doc. 61-6 at ¶ 6).

Of course, Sergeant Parker and Officer Cutts dispute much of Mr. Wilhite's account. The incident report they submitted recounts that Mr. Wilhite was displaying behavior consistent with drug use, was not handcuffed upon arriving in the medical unit, and violently resisted medical staff so that Sergeant Parker and Officer Cutts were forced to use targeted baton strikes to Mr. Wilhite's arms and legs to subdue and restrain him, at which point all violence ceased. *See* (doc. 55-7). However, because the court must accept Mr. Wilhite's version of events at summary judgment, it need not recount Defendants' version in full.

## II.   Legal Standard

### A.   Summary Judgment

A court must grant summary judgment if the moving party demonstrates the absence of any "genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, the non-moving party then has the burden to demonstrate that the parties genuinely dispute issues of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In doing

so, the non-movant must point to evidence beyond the pleadings to designate "specific facts showing . . . a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

      B.    <u>Excessive Force</u>

"[C]ourts considering a prisoner's [Eighth Amendment] claim must ask both [1] if 'the officials act[ed] with a sufficiently culpable state of mind' and [2] if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

The first component, often termed the "objective" component, examines whether the conduct at issue amounted to an "unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The objective component is not satisfied by a *de minimis* use of force, unless that force is of a "sort repugnant to the conscience of mankind." *Sconiers*, 946 F.3d at 1265-66 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010)). "Instead, the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Id.* at 1266 (quoting *Wilkins*, 559 U.S. at 37).

The second, or "subjective," component asks whether a correctional officer applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Courts consider five factors in evaluating whether a use of force against an inmate was in good faith: "(a) the need for the application of force; (b) the relationship between the need and the amount of force that was used; (c) the extent of the injury inflicted upon the prisoner; (d) the extent of the threat to the safety of staff and inmates; and (e) any efforts made to temper the severity of a forceful response." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007)). Although *Fennel* applied this subjective analysis to an excessive force claim under the Fourteenth Amendment, which would now require a different analysis under *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the five-factor subjective analysis remains appropriate to Eighth Amendment excessive force claims. *See Patel v. Lanier Cnty. Georgia*, 969 F.3d 1173, 1181 (11th Cir. 2020).

## III.   Analysis

As a threshold matter, Defendants' attempts to invoke the doctrine of qualified immunity are misplaced, as that defense is flatly inapplicable to Eighth Amendment excessive force claims in the Eleventh Circuit. In *Skrtich v. Thornton*,

the Eleventh Circuit held that "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." 280 F.3d 1295, 1301 (11th Cir. 2002).

At least one district court in this circuit has recently pointed out the significant tension between *Skrtich*'s bright-line rule and Supreme Court precedent on qualified immunity, which may call for a more fact-specific analysis of whether the particular type and extent force at issue has been "clearly established" as unconstitutional. *See Stalley v. Cumbie*, --- F. Supp. 3d ---, 2022 WL 504018 at *7 n. 8 (M.D. Fla. Feb. 19, 2022). Judge Mizelle aptly notes that the Supreme Court has held that defendants in an excessive force case "may nevertheless be shielded from liability" if they "did not violate clearly established [law]." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (quotations omitted). And Judge Mizelle also correctly observes that *Skrtich*'s rule "assumes that all Eighth Amendment excessive force cases are so similar that no court need ever consider whether the law is clearly established as applied to the particular facts," whereas "the Supreme Court has held that the clearly-established-law inquiry 'must be undertaken in light

of the specific context of the case, not as a broad general proposition.'" *Id.*
(quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

This court adds that the Supreme Court has nevertheless rejected a
requirement that facts be "fundamentally similar" or even "materially similar" to
past cases for law to be clearly established, holding instead that "the salient
question" is whether existing law "gave [Defendants] fair warning that their
alleged treatment of [Plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741. This
court shares the concerns that Judge Mizelle raises in *Stalley* but is bound by
*Skrtich's* bright-line rule and therefore applies it. As a result, "[t]he only question .
. . is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss
or a motion for summary judgment," *Skrtich*, 280 F. 3d at 1301, and the court now
turns to that question.

A.   <u>Objective Component</u>

A genuine issue of material fact exists unless no reasonable jury accepting
Mr. Wilhite's version of the facts could find that Sergeant Parker's and Officer
Cutts' conduct "offends contemporary standards of decency." *Sconiers*, 946 F.3d at
1266 (quoting *Wilkins*, 559 U.S. at 37). Defendants fall far short of that showing
here. Indeed, the court finds that a reasonable jury would have difficulty *not*
concluding that prison officers beating a fully restrained, possibly unconscious
prisoner who had just suffered an epileptic seizure "offends contemporary

standards of decency." Defendants' arguments on the objective component in their opening brief all hinge on the court crediting their version of the facts, and Defendants' reply brief does not address the objective component at all. Rather than contending that the actions Mr. Wilhite describes do not rise to the level of excessive force, Defendants simply assert that *their* characterizations of the events fall short of it. (Doc. 54 at 12-13). The court therefore need not dwell long here. Defendants have failed to meet their burden of a prima facie showing that no genuine issue of material fact exists with respect to the objective component.

>    B.    Subjective Component

Defendants argue that "Plaintiff cannot meet his burden on the subjective analysis" because his "only dispute about the material fact in this case is his declaration," which they contend "exaggerates basic facts, is inconsistent in its recollection of events, makes incredible assertions, and contradicts the other inmates' declarations." (Doc. 65 at 6). This argument fails, both as a matter of fact (because other inmates' affidavits also support many of the allegations in Mr. Wilhite's affidavit) and as a matter of black-letter law (because precedent is explicit that a plaintiff's affidavit alone can create a genuine issue of material fact). Indeed, Defendants give the game away by conceding that they require the court to assess credibility (claiming that Plaintiff's affidavit makes "incredible assertions")—the very thing courts cannot do at the summary judgment stage. *See*

*Sconiers*, 946 F.3d at 1263 ("when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible").

Defendants could hardly be more wrong when asserting that Plaintiff's affidavit alone cannot defeat their motion for summary judgment. Quite to the contrary, the Eleventh Circuit recently reaffirmed in an *en banc* decision that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (en banc) (citing additional 11th Circuit precedents). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (nonmoving party must "go beyond the pleadings and *by her own affidavits, or* by [other forms of evidence] designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)) (emphasis added). The court in *Stein* expressly rejected the prospect of "imposing a corroboration gloss on Rule 56," and instead adhered to the rule that "a plaintiff's own testimony may be sufficient to withstand summary judgment." *Stein*, 881 F.3d at 858 (quoting *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1160 (11th Cir. 2012)).

So even where Mr. Wilhite's affidavit is uncorroborated by the affidavits of other witnesses or other evidence, the question is whether any reasonable jury could find that Defendants violated Mr. Wilhite's constitutional rights, accepting his version of the facts and making all reasonable inferences from them.

Nevertheless, the court notes that Defendants' assertion is also incorrect as a factual matter because other affidavits in the record in addition to Plaintiff's own also contradict Defendants' account of the material facts. To take just two key examples, other inmates' affidavits corroborate that Mr. Wilhite was handcuffed *before* Sergeant Parker and Officer Cutts began applying force against him. *See* (doc. 61-4 at ¶ 3; doc. 61-6 at ¶ 3). And the affidavit of a former medical employee at Bibb corroborates both that Mr. Wilhite was restrained and unable to resist when Sergeant Parker and Officer Cutts used their batons and that the officers struck Mr. Wilhite on the back, not just on his extremities. (Doc. 66-1 at ¶¶ 5-6).

The court now turns to the factors bearing on the subjective element of an excessive force claim.

### 1.   *Need for the Application of Force*

Viewing the evidence in the light most favorable to Mr. Wilhite, as it must on summary judgment, the court detects little need for Sergeant Parker and Officer Cutts to apply force. The record contains evidence a jury could credit showing that Mr. Wilhite was already handcuffed before Sergeant Parker and Officer Cutts took custody of him. (Doc. 61-2 at ¶¶ 6-7; Doc. 61-4 at ¶ 3; Doc. 61-6 at ¶ 3). Additionally, evidence in the record indicates that Mr. Wilhite's seizures were not violent to an extent that would require significant force to restrain him. One inmate's affidavit states that Mr. Wilhite "was not violent at all" when his seizures

came on. (Doc. 61-4 at ¶ 10). Another inmate affidavit relates that Mr. Wilhite's seizures involved "failing his arms" but "[h]e would not lash out and he was not violent" because he "was just using his hands." (Doc. 61-3 at ¶ 3). A third inmate affidavit similarly states that Mr. Wilhite's "arms were flailing and he was making strange noises" but he "was not violent" and adds that by the time Plaintiff was being transported by wheelchair to the infirmary, he "appeared to be unconscious." (Doc. 61-6 at ¶¶ 3-4). Assuming these facts, a jury could find that Sergeant Parker and Officer Cutts had little, if any, justification for the use of force.

### 2.   *Proportionality of Force Used*

The second, closely related factor for consideration is "the relationship between the need and the amount of force that was used." *Fennell*, 559 F.3d at 1217. Plaintiff's affidavit and that of former Bibb medical employee Leigh Shannon Taormina depict force that is grossly disproportionate to any small need for force that the facts recounted in the first factor might justify. Both affidavits recount that Sergeant Parker and Officer Cutts repeatedly used wooden batons to strike Mr. Wilhite severely, even though he lacked any ability to resist because of his restraints. (Doc. 61-2 at ¶¶ 7-8; Doc. 66-1 at ¶ 6). The evidence tending to favor Mr. Wilhite's version of the facts discloses a "vicious" beating completely disproportionate to any minor need to restrain a handcuffed prisoner suffering an epileptic seizure.

13

3.     *Extent of the Injury Inflicted*

Defendants point to a body chart indicating relatively minor injuries consistent with their version of events (doc. 54 at 12-13) while contending that "[f]ellow inmates' appraisal of bruising on other parts of Plaintiff's body is immaterial to the case" (doc. 65 at 3-4). But in so doing, Defendants expose the existence of conflicting record evidence regarding the extent of Mr. Wilhite's injuries. Indeed, as Defendants implicitly concede, Mr. Wilhite put forth significant evidence tending to show more extensive injuries than the body chart indicated. For example, the affidavits reflect that Mr. Wilhite's back and legs were "covered in bruises" the day after the incident (doc. 66-1 at ¶ 8); that Mr. Wilhite "could hardly walk" upon returning to his dorm and had "bad injuries on his leg, back and arms" including "big bruises and injuries from a stick" and "long stripes where the stick hit him," (doc. 61-4 at ¶¶ 4-5); and that Mr. Wilhite had "numerous bruises" on both legs that "turned absolutely black" while his "face appeared have been hit by a club or a fist" (doc. 61-6 at ¶¶ 5-6).

Mr. Wilhite presented affidavits containing eyewitness accounts that are sufficient in themselves to create a genuine issue of fact regarding the extent of his injuries, which is material to analysis of the subjective component of an excessive force claim. But the affidavits also provide an additional basis on which a jury could reasonably discredit the body chart on which Defendants rely. Mr. Wilhite's

affidavit alleges that Sergeant Parker "made me take off my clothes so he could do his body chart of me." (Doc. 61-2 at ¶ 11). Ms. Taormina's affidavit alleges that she previously witnessed "a situation where [Alabama Department of Corrections] personnel . . . destroyed body charts in inmate files at Bibb and replaced them with fabricated body charts." (Doc. 66-1 at ¶ 13). From these two pieces of evidence, a jury could infer that Sergeant Parker either prepared the body chart himself, minimizing Mr. Wilhite's injuries; directed Bibb medical personnel to prepare a less than truthful body chart; or later replaced the original body chart with a fabricated one.

By no means does the court imply that such conclusions are correct or more likely than not; however, the record contains sufficient evidence that a reasonable jury could draw them. Viewing the evidence in the light most favorable to Mr. Wilhite, a reasonable jury could find the extent of his injuries suggestive of malicious intent by Sergeant Parker and Officer Cutts.

### 4.   *Extent of the Threat to Staff and Inmate Safety*

Mr. Wilhite's version of the facts shows little threat to the safety of other inmates or prison staff. As described above, Mr. Wilhite's affidavit and those of his fellow inmates state that he was handcuffed prior to coming under Sergeant Parker's and Officer Cutts' watch. (Doc. 61-2 at ¶¶ 6-7; Doc. 61-4 at ¶ 3; Doc. 61-6 at ¶ 3). Several inmate affidavits also state that Mr. Wilhite's seizures are "not

15

violent." (Doc. 61-4 at ¶ 10; Doc. 61-3 at ¶ 3; Doc. 61-6 at ¶¶ 3-4). A handcuffed inmate suffering a non-violent seizure would pose no threat to prison staff or other inmates, so this factor too weighs against Defendants when the affidavits favorable to Mr. Wilhite's account are credited as the court must do on summary judgment.

5. *Efforts to Temper Severity*

Mr. Wilhite recounts Sergeant Parker and Officer Cutts "taking their batons and beating me from [my] head to my toes" and alleges that they "hit me on my shins, both eyes, [and] both arms" and also that Officer Cutts "punched me in the chest." (Doc. 61-2 at ¶ 8). Similarly, Ms. Taormina's affidavit describes Defendants "viciously beating" Mr. Wilhite "over and over and over as Mr. Wilhite lay stomach down with his hands restrained in handcuffs behind his back." (Doc. 66-1 at ¶ 6). These accounts, if believed, are indicative not of any effort to "temper the severity" of force, but rather of officers acting "maliciously and sadistically for the very purpose of causing harm." *See Whitley*, 475 U.S. at 320-21.

**IV.   Conclusion**

Mr. Wilhite alleges that Sergeant Parker and Officer Cutts savagely beat him while he was fully restrained and unable to resist. He offers his own affidavit, those of fellow inmates, and that of a former medical employee of Bibb in support of his case. Predictably, Sergeant Parker's and Officer Cutts' account of events is

16

quite different, with Mr. Wilhite unrestrained and violent and their use of force measured and precise.

This court need not—indeed it *cannot*—weigh the credibility of those accounts at the summary judgment stage. Fact determinations, especially witness credibility, remain the proper province of a jury. As Defendants' reply brief concedes, the facts material to an excessive force analysis are "disputed by the declaration of Plaintiff." (Doc. 65 at 5). His affidavit is enough, although Mr. Wilhite has more evidence to show genuine factual issues. Sergeant Parker and Officer Cutts will have the opportunity to persuade a jury that their account, not Mr. Wilhite's, is the truthful one. But they are not entitled to judgment as a matter of law because Mr. Wilhite has demonstrated that genuine issues of material fact exist for the jury to resolve. So the court will DENY Defendants' motion for summary judgment.

**DONE** and **ORDERED** this 29th day of August, 2022.

_Karon O. Bowdre_

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE